IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHELLER F. GRIFFIN                                                    PLAINTIFF

v.                          Civil No. 10-2109

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                       DEFENDANT

**MEMORANDUM OPINION**

I.      **Procedural Background**

Plaintiff, Sheller F. Griffin, appeals from the decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §42 U.S.C. 405(g).

Plaintiff protectively filed her DIB and SSI applications on March 10, 2008, alleging a disability onset date of September 29, 2007, due to high blood pressure, asthma, back pain, and arthritis in her ankles, feet, and hips.  Tr. 10, 32, 58, 63, 109-112.  At the time of the alleged onset date, Plaintiff was thirty nine years old with a high school education.  Tr. 17, 69, 500.  She has past relevant work as a certified nursing assistant ("CNA").  Tr. 17, 64, 69, 71-77, 500.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 32-36, 38-41. At Plaintiff's request, an administrative hearing was held on February 4, 2009.  Tr. 492-522. Plaintiff was present at this hearing and represented by counsel.  Tr. 492-522.  The ALJ rendered an unfavorable decision on September 18, 2009, finding that Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 7-19.  Subsequently, the Appeals Council denied Plaintiff's Request for Review on July 8, 2010, thus making the ALJ's decision the final decision of the

Commissioner.  Tr. 2-5.  Plaintiff now seeks judicial review of that decision.

## II.   **Factual Background**

Plaintiff has a lengthy history of asthma, chronic renal insufficiency, obesity, back pain, and high blood pressure.  Tr. 114-435.  She submitted a substantial amount of medical records dating back to 1993.[1]  Tr. 114-435.  In February 2003, Plaintiff was involved in a motor vehicle accident in which she strained her lower back and left shoulder.  Tr. 115-127, 198-204.  An MRI of Plaintiff's lumbar spine revealed degenerative disc changes at L5-S1 with a small central protrusion, but no nerve root compression or significant canal stenosis.  Tr. 123.  Posterolateral bulges were also noted bilaterally at L4-5.  Tr. 123. Plaintiff underwent conservative treatment, including physical therapy.  Tr. 166-118.  On April 2, 2003, Charles H. Chalfant, M.D., noted that Plaintiff's back pain was markedly improved.  Tr. 115.  Upon examination, she did not exhibit any tenderness or range of motion difficulties.  Tr. 115.  She could heel walk, toe walk, and squat without problems, and a straight leg raise was negative.  Tr. 115.  At this time, Dr. Chalfant released Plaintiff back to work at full duty.  Tr. 115.

On March 14, 2003, Plaintiff presented to Sparks Regional Medical Center ("Sparks") with complaints of dizziness and chest pain.  Tr. 156-197.  After extensive testing, myocardial infarction was ruled out, although Plaintiff was severely hypertensive with a blood pressure of 236/131.  Tr. 156-197.  Plaintiff was prescribed Hydrochlorothiazide, Micardis, Labetalol, and Norvasc for blood pressure regulation.  Tr. 156-197.  On March 22, 2003,  Plaintiff was discharged in stable condition.  Tr. 157.

---

[1] Due to volume, only a brief overview of Plaintiff's medical records prior to her alleged onset date of September 29, 2007, is provided in this opinion.

In early 2006, Plaintiff was referred to University of Arkansas for Medical Sciences ("UAMS") for a stress test. Tr. 244. On March 23, 2006, Plaintiff reported that Qvar samples and Albuterol had helped her asthma "very much" and her asthma attacks had become very infrequent. Tr. 251-252. However, she reported chest pain and right arm numbness with physical activity, both of which were relieved by rest. Tr. 251. EKG findings were normal. Tr. 248. Plaintiff underwent a treadmill stress test, which was negative. Tr. 239-240, 248. However, she had a hypertensive response and developed exercise-induced asthma. Tr. 239, 248.

Plaintiff received routine medical care at AHEC. Tr. 207-244. On May 18, 2006, Philip Elangwe, M.D., noted that Plaintiff was taking her medications and felt "very good and . . . strong." Tr. 245. Plaintiff's asthma was under good control, but she was advised to quit smoking. Tr. 245. In September 2006, Dr. Elangwe noted that Plaintiff's depression, asthma, hypertension, and tobacco abuse had improved. Tr. 231-233. However, he did note some bilateral leg edema. Tr. 232. Dr. Elangwe prescribed Albuterol Sulfate, Wellbutrin for smoking cessation and depression, Diovan, Toprol, and Norvasc. Tr. 232. On February 5, 2007, Plaintiff weighed 317 pounds. Tr. 217. She complained that diet and exercise had not improved her weight. Tr. 217-218. On March 13, 2007, Plaintiff complained of back pain exacerbated by exercise. Tr. 214. Dr. Elangwe refilled Plaintiff's medications and recommended Tylenol for back pain. Tr. 215. He also noted that Plaintiff leg edema, depression, asthma, and hypertension had improved. Tr. 215.

On September 21, 2007, Plaintiff presented to Sparks with complaints of left ankle pain and swelling. Tr. 135-145. Upon examination, Plaintiff's left ankle was tender and mildly swollen. Tr. 136. Range of motion of Plaintiff's feet was within normal limits, although she could only put partial weight on her left foot. Tr. 136. X-rays of Plaintiff's left ankle revealed a 3mm plantar

-3-

calcaneal spur and soft tissue swelling, but no acute fracture.  Tr. 144-145.  Plaintiff was assessed with degenerative joint disease of the ankle.  Tr. 137.  She was given a pair of crutches and prescribed Tylenol with Codeine.  Tr. 137-142.

In 2008, Plaintiff was treated at Mercy Northside Clinic.  Tr. 372-379.  On January 2, 2008, Plaintiff weighed 301 pounds and her blood pressure was 136/84.  Tr. 377.  She was taking Procardia XL, Toprol XL, and Diovan HCT for hypertension, which she received through a patient assistance program.  Tr. 377.  On March 7, 2008, Plaintiff presented with complaints of back and right hip pain. Tr. 374-375.  Lisa Toth, APN, examined Plaintiff and noted tenderness on palpation of the lower lumbar and right hip area.  Tr. 375.  She also noted that Plaintiff was unable to put pressure on her right leg and had diminished reflexes in the right ankle.  Tr. 375.  Plaintiff was assessed with lumbago and given a prescription for Flexeril.  Tr. 375-376.  X-rays of Plaintiff's lumbar spine revealed mild degenerative disc disease at L3-4 and L4-5 with degenerative facet changes.  Tr. 379, 402.  However, no fracture or gross malalignment was appreciated.  Tr. 371.

On April 21, 2008, Plaintiff presented with to Mercy Northside Clinic with complaints of back pain and asthma.  Tr. 373.  Ms. Toth noted that Plaintiff wanted disability for her back pain, but found that Plaintiff's "back x-rays do not support her ability to get disability." Tr. 373.  At this time, Plaintiff was taking Procardia XL and Feldene.  Tr. 373.  Her weight was at 302 pounds and her blood pressure was 128/82.  Tr. 373.  Upon examination, Ms. Toth noted some mild wheezing, but respiration rhythm and depth were normal.  Tr. 374.  She also noted mild edema in Plaintiff's lower legs.  Tr. 374.  Plaintiff was assessed with asthma and given a prescription for Diovan HCT, a Pulmicort Flexhaler, and Proventil.  Tr. 374.  Plaintiff was also encouraged to lose weight to reduce stress on her back.  Tr. 374.

-4-

In a Physical Residual Functional Capacity ("RFC") Assessment dated May 8, 2008, Bill F. Payne, M.D., an agency specialist, determined that Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, sit/stand/walk for a total of about six hours in an eight-hour workday, and push/pull within those limitations. Tr. 381-388. He found no postural, manipulative, visual, communicative, or environmental limitations. Tr. 381-388. Based on these findings, Dr. Payne found that Plaintiff could perform light work. Tr. 388.

On September 4, 2008, Plaintiff presented to Mercy Northside Clinic for a routine check-up. Tr. 395. She complained of ankle pain and occasional headaches. Tr. 395. Plaintiff's blood pressure was 140/90 and her weight was down to 289 pounds. Tr. 396. Upon examination, Plaintiff's lungs were clear to auscultation and had normal respiration rhythm and depth. Tr. 296. Heart rate and rhythm were normal, with no murmurs or rubs. Tr. 396. Examination of Plaintiff's ankles revealed left ankle swelling with some tenderness on palpation. Tr. 396. Plaintiff had normal sensation and pedal pulses, as well as normal range of motion. Tr. 396. Ms. Toth assessed Plaintiff with ankle joint pain, benign essential hypertension, and obesity. Tr. 396. She was given refills on Procardia, Toprol, and Diovan. Tr. 396-397. She was also prescribed Mobic. Tr. 397.

On December 16, 2008, Plaintiff presented to Sparks with complaints of neck, left shoulder, and lower back pain following a minor motor vehicle accident. Tr. 412-425. Upon examination, Plaintiff had painful range of motion and moderate tenderness in her neck and left shoulder. Tr. 424. She was assessed with a neck sprain and discharged with prescriptions for Lortab and Robaxin. Tr. 421. She was instructed to take Motrin for pain and to follow-up with her primary care physician. Tr. 421.

On January 20, 2009, Plaintiff saw Ronald Myers, Sr., M.D., for a consultative physical examination. Tr. 409-410. Plaintiff had full range of motion in her cervical spine, but had reduced range of motion and muscle spasms in her lumbar spine. Tr. 409. She had full range of motion in her shoulder, elbows, wrists, hands, hips, and knees, but range of motion in her left ankle was limited. Tr. 409. Plaintiff was neurologically intact, but she exhibited some muscle weakness and atrophy in her left gastrocnemius and soleus muscles. Tr. 410. Dr. Myers found no other abnormalities. Tr. 409-410.

In a Medical Source Statement (Physical), Dr. Myers found that Plaintiff could sit for a total of four hours in an eight-hour workday and stand and walk for a total of two hours in an eight-hour workday. Tr. 406. He found that Plaintiff could occasionally lift/carry six to ten pounds and use both hands for simple grasping, pushing and pulling, and fine manipulation. Tr. 406-407. Dr. Myers determined Plaintiff could only use her right foot for repetitive movements. Tr. 407. He found that Plaintiff could occasionally bend, squat, crawl, reach above her head, stoop, crouch, and kneel, but could never climb. Tr. 407. Environmentally, Dr. Myers found that Plaintiff could frequently tolerate exposure to marked temperature changes, dust, fumes, gases, and noise, occasionally tolerate being around moving machinery and driving automotive equipment, and never tolerate exposure to unprotected heights. Tr. 407. He noted that Plaintiff's pain was severe and would require unscheduled breaks during the workday. Tr. 407-408. He also determined Plaintiff would likely miss more than four workdays a month due to pain. Tr. 408.

On April 7, 2009, Plaintiff was examined by Marie Pham-Russell, APN. Tr. 427-430. Plaintiff reported a history of asthma, left ankle pain and swelling, hypertension, chest pain, and trouble walking. Tr. 427. Her blood pressure was 140/82 and she weighed 296 pounds. Tr. 427.

Plaintiff's physical examination was essentially normal. Tr. 427-430. She had a regular heart rate and rhythm without murmurs. Tr. 428. Additionally, Plaintiff's breath sounds were normal, with no evidence of wheezing. Tr. 428. Plaintiff had normal range of motion in her cervical and lumbar spine, as well as her shoulders, elbows, wrists, hands, hips, knees, and ankles. Tr. 429. She exhibited no muscle spasms, weakness, or atrophy, and had normal peripheral pulses. Tr. 428. No edema was noted. Tr. 429. Based on her evaluation, Ms. Pham-Russell found no physical limitations. Tr. 430. Stephanie Frisbie, M.D., reviewed and signed this evaluation. Tr. 430.

On March 25, 2009, Plaintiff underwent a pulmonary function test at Fort Smith Lung Center. Tr. 432-435. These results were not interpreted by a physician.

## III.  <u>Applicable Law</u>

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

-7-

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.   <u>Discussion</u>

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since September 29, 2007, the alleged onset date. Tr. 12. At step two, the ALJ found that Plaintiff suffered from disorder of the back, degenerative joint disease ("DJD") of the left ankle, obesity, and asthma, which were considered severe impairments under the Act. Tr. 12-13. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 13. At step four, the ALJ found that Plaintiff had the

RFC to perform sedentary work, but could lift/carry ten pounds occasionally and less than ten pounds frequently, sit for about six hours during an eight-hour workday, stand and walk for about two hours during an eight-hour workday, and must avoid concentrated exposure to dusts, gases, fumes, odors, poor ventilation, humidity, and extreme temperatures. Tr. 14-17. Based on his RFC assessment, the ALJ determined Plaintiff could not perform her past relevant work as a CNA. Tr. 17. After eliciting testimony from a vocational expert, the ALJ determined there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as compact assembler, of which there are 106,000 jobs nationally and 1500 jobs locally, credit authorizer, of which there are 48,000 jobs nationally and 200 jobs locally, and interviewer, of which there are 23,000 jobs nationally and 200 jobs locally. Tr. 17-18. Accordingly, the ALJ determined Plaintiff had not been under a disability, as defined by the Social Security Act, at any point from September 29, 2007, through September 18, 2009. Tr. 18-19.

Plaintiff contends the ALJ erred by: (1) improperly determining her RFC; (2) discrediting her subjective complaints; (3) improperly considering her obesity; and (4) giving improper weight to examining medical sources. *See* Pl.'s Br. 12-19.

A. <u>RFC Assessment</u>

Plaintiff argues that the ALJ erred in determining her RFC. *See* Pl.'s Br. 12-15. This Court disagrees. At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her

limitations." *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

The ALJ properly took into account Plaintiff's impairments when determining her RFC.  The medical evidence of record suggests that Plaintiff's back impairment is not disabling.  X-rays of Plaintiff's lumbar spine revealed mild degenerative disc disease at L3-4 and L4-5 with degenerative facet changes.  Tr. 379, 402.  However, no fracture or gross malalignment was appreciated.  Tr. 371.  Ms. Toth, an advanced practice nurse, noted that Plaintiff's back x-rays did not support a finding of disability.[2]  Tr. 373.  In fact, she indicated that Plaintiff could work with proper body mechanics.  Tr. 374.  Additionally, despite Plaintiff's complaints of low back pain and muscle spasms, she was not regularly prescribed pain medication and was not referred to a specialist.  *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications.").  For these reasons, the ALJ properly took into consideration Plaintiff's back impairment.

The ALJ also properly considered Plaintiff's DJD of her left ankle.  Although Plaintiff undoubtedly experiences difficulties due to ankle pain and swelling, she only occasionally

_____

[2] Although Ms. Toth is not an "acceptable medical source," her findings were reviewed by John R. Williams, M.D.  Tr. 374; *see Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (giving treating source status to a group of medical professionals, including therapists and nurse practitioners who worked with claimant's treating psychiatrist, where the treatment center used a team approach).  Moreover, Ms. Toth fits the criteria for "other medical sources" and is considered an appropriate source of evidence concerning the severity of Plaintiff's impairment and its effect on her overall ability to work.  20 C.F.R. § 404.1513(d).

complained of ankle pain to her treating physician. *See Lacewell v. Barnhart*, 123 Fed. Appx. 243, 245 (8th Cir. 2005) (claimant's relatively few complaints of headaches undermined the existence of a severe impairment). X-rays of Plaintiff's left ankle dated September 2007 revealed a 3mm plantar calcaneal spur and soft tissue swelling, but no acute fracture. Tr. 137. She was assessed with DJD of the ankle and given a pair of crutches for stability. Tr. 139-142. In September 2008, Plaintiff's left ankle was swollen with some tenderness on palpation. Tr. 396. However, she had normal range of motion, sensation, and pedal pulses. Tr. 396. In January 2009, Plaintiff had limited range of motion in her left ankle and exhibited some muscle weakness in her lower left leg. Tr. 410. Dr. Myers found that Plaintiff could not use her left foot for repetitive movements, but found no other foot limitations. Tr. 407. In April 2009, Plaintiff had normal range of motion in her ankles and no evidence of edema. Tr. 429. Significantly, the VE testified that no jobs would be eliminated if Plaintiff was required to elevate her feet for up to four hours per workday. Tr. 521. After reviewing the evidence of record, the Court finds no error in the ALJ's determination that Plaintiff could perform a limited range of sedentary work despite her ankle impairment.

The ALJ properly considered Plaintiff's remaining impairments. In March 2007, Dr. Elangwe noted that Plaintiff's asthma had improved. Tr. 215. In April 2008, Ms. Toth noted some mild wheezing, but respiration rhythm and depth were normal. Tr. 374. Plaintiff was given a prescription for Proventil and a Pulmicort Flexhaler. Tr. 374. The ALJ sent Plaintiff for a pulmonary function test, which was not interpreted, but listed a code indicating "toxic effect of other gases, fumes, or vapors." Tr. 16. The ALJ also considered Plaintiff's testimony that she has trouble breathing when the weather is extremely hot or cold. Tr. 503. As a result, the ALJ determined Plaintiff must avoid concentrated exposure to dusts, gases, fumes, odors, poor ventilation, and

extreme temperatures.  Tr. 14.  Substantial evidence supports this determination.

Additionally, the ALJ did not err in determining that Plaintiff's high blood pressure and depression were non-severe.  Tr. 12-13.  The medical evidence of record shows that Plaintiff's blood pressure is controlled with three medications.  Tr. 509; *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (an impairment that can be controlled with medication is not considered disabling). Additionally, Plaintiff did not allege depression in her initial applications, nor did she seek professional counseling or mental health treatment.  Tr. 13, 63, 89, 99; *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (the fact that claimant did not allege depression in her application for disability benefits was considered significant); *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (claimant did not seek, and was not referred for, mental health treatment).  Although Plaintiff took generic Wellbutrin for depression, medical records indicate that she also took this medication to aid in smoking cessation and weight loss.  Tr. 232.  For these reasons, the ALJ did not err in finding Plaintiff's high blood pressure and depression to be non-severe.

Finally, Plaintiff argues that the ALJ discounted the opinions of Dr. Myers, Dr. Frisbee, and the agency consultant, leaving him no medical sources to rely on.  *See* Pl.'s Br. 12-15.  In this instance, the ALJ essentially concurred with Dr. Myers' opinion regarding Plaintiff's exertional limitations, but found that his non-exertional restrictions were not supported by the medical evidence as a whole.  Tr. 16.  In making this determination, the ALJ considered but ultimately discredited Dr. Frisbee's opinion that Plaintiff had no physical limitations.  Tr. 16-17.  Additionally, the ALJ discredited the agency consultant's opinion that Plaintiff could perform light work.  Tr. 17. Resolving conflicting medical opinions is within the scope of the ALJ's function.  *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citing *Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002).

-12-

Moreover, Plaintiff has not directed this Court to any case law which would suggest that the ALJ must wholly adopt one physician's opinion while completely discrediting another's. As such, the Court finds no error in the ALJ's RFC determination.

None of Plaintiff's medical records support her contention that she was totally disabled during the relevant time period. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Significantly, none of Plaintiff's treating physicians opined that she was unable to work. *See Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (no physician expressed any opinion that the claimant was disabled). After considering all the relevant evidence, the Court concludes that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence).

B. Subjective Complaints

Plaintiff alleges the ALJ improperly dismissed her subjective complaints. *See* Pl.'s Br. 16-18. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of

an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

Contrary to Plaintiff's assertion, the ALJ properly considered her subjective complaints and dismissed them for legally sufficient reasons.   The ALJ cited the lack of objective medical corroboration as evidence that her limitations were not of disabling severity.  Tr. 353-354; *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints); *Davis v. Barnhart*, 197 Fed. Appx. 521, 522 (8th Cir. 2006) (ALJ properly considered medical records, lack of treatment, and failure to take prescription pain medication when discounting her subjective complaints).  Additionally, although Plaintiff alleged side effects from her medications, she did not report these side effects to any of her physicians.  Tr. 13; *Johnston v. Apfel*, 210 F.3d 870, 873 (8th Cir. 2000) (claimant did not complain about any medication side effects to her treating physicians).  Finally, the ALJ briefly noted that Plaintiff is able to take care of all her personal needs, cook, drive, pay her bills, and handle finances.  Tr. 13, 79-84.  She also reported going to church, shopping, and spending time with others.  Tr. 13, 79-84; *Halverson v. Astrue*, 600 F.3d 922, 928 (8th Cir. 2010) (claimant's allegations of employment-related difficulties were inconsistent with her ability to travel, visit friends, go shopping, and care for her activities of daily living).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints."  *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).  Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective

-14-

complaints. *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

C. Obesity

Plaintiff contends the ALJ erred in considering her obesity. *See* Pl.'s Br. 17-18. This argument has no merit. SSR 02-01p governs the evaluation of obesity. 67 Fed. Reg. 57859-02 (September 12, 2002). Although there is evidence in the record to show that Plaintiff was obese, the Court finds no evidence to indicate that Plaintiff's obesity prevented her from performing a wide range of sedentary work. None of her treating doctors suggested her weight imposed any additional work-related limitations, and she did not testify that her weight imposed additional restrictions. *See Anderson v. Barnhart,* 344 F.3d 809, 814 (8th Cir. 2003). Furthermore, the ALJ noted that Plaintiff successfully worked for a number of years despite her obesity. Tr. 16. Accordingly, the ALJ did not err in his evaluation of Plaintiff's obesity.

D. Examining Sources

Plaintiff contends the ALJ erred in the weight given to Lisa Toth, APN. *See* Pl.'s Br. 18-19. This Court disagrees. While a nurse practitioner is not considered an "acceptable medical source," an ALJ may consider evidence provided by "other sources" to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513, 416.913. Contrary to Plaintiff's contention, there is simply no evidence to suggest that the ALJ gave Ms. Toth's opinion more weight than Dr. Myers' opinion. The ALJ considered Dr. Myers' opinion and essentially concurred with his determination regarding Plaintiff's exertional restrictions. Tr. 16. However, he determined the medical evidence did not support Dr. Myers' opinion regarding Plaintiff's non-

-15-

exertional restrictions.  Tr. 16.  As previously mentioned, resolving conflicting medical opinions is within the scope of the ALJ's authority.  *Kirby*, 500 F.3d at 709 (citing *Estes,* 275 F.3d at 725).  Furthermore, there is no indication that the ALJ departed from the guidelines for assessing other source evidence when considering Ms. Toth's opinion.  For these reasons, Plaintiff's argument has no merit.

## V.    <u>Conclusion</u>

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed.  Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 28th day of June 2011.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE

-16-